UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS K. BRASHEAR, | 1:09-CV-00344 GSA HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| KEN CLARK, Warden, et al., | |
| Respondents. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction by jury trial on June 21, 1989, of first degree murder (Cal. Penal Code § 187(a)), and his conviction by jury trial on April 17, 2007, of battery on a non-confined person (Cal. Penal Code § 4501.5). (LD[1] 1.) Petitioner was sentenced to serve an indeterminate term of 25 years to life on the murder conviction, and a consecutive indeterminate term of 25 years to life on the battery conviction. (LD 1.) The

---

[1] "LD" refers to the documents lodged by Respondent with his response.

instant petition raises claims concerning the 2007 battery conviction.

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On October 23, 2008, the Fifth DCA affirmed the judgment in a reasoned opinion. (LD 5.) Petitioner then filed a petition for review in the California Supreme Court. (LD 6.) On January 21, 2009, the California Supreme Court summarily denied the petition. (LD 7.)

On April 10, 2008, Petitioner filed a habeas petition in the Fifth DCA. (LD 8.) On April 17, 2008, the petition was denied. (LD 9.) Petitioner then filed a habeas petition in the California Supreme Court on July 20, 2009. (LD 10.)

On February 25, 2009, Petitioner filed a federal habeas petition. Following preliminary review of the petition, the Court determined the petition was deficient and dismissed it with leave to file a first amended petition. Petitioner did so on April 16, 2009. The petition was reviewed and again determined to be deficient. Therefore, the Court dismissed it but granted Petitioner leave to file a second amended petition. On June 1, 2009, Petitioner filed the instant second amended petition. On August 27, 2009, Respondent filed an amended motion to dismiss for failure to exhaust state remedies. The undersigned granted the motion to dismiss on September 30, 2009, and dismissed one claim for relief. The remaining claims are as follows: 1) The trial court violated federal constitutional principles when it failed to instruct the jury on the necessity defense; 2) The trial court violated Petitioner's right to have the jury determine each fact that increased the length of his sentence; 3) Petitioner was denied his right under the federal constitution to have the jury decide whether his prior conviction of 245(a)(1) qualified as a 'strike.' Respondent filed an answer to the petition on October 30, 2009. Petitioner did not file a traverse.

**FACTUAL BACKGROUND**[2]

> Appellant's battery of Stover was captured on two security cameras located in the courtroom. Both of the videos were received into evidence and played for the jury. The jury heard testimony from several witnesses to the incident, including the judge who presided at the misdemeanor trial, the victim (Stover), the courtroom clerk, the correctional sergeant who transported appellant to the courtroom on the day of the incident and who sat in the front row of the courtroom that day, one of the two correctional officers who sat directly behind appellant for security purposes and who subdued appellant immediately after the battery on

---

[2] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

Stover, and appellant himself. Also received into evidence was a letter appellant wrote to an entity called California Prison Focus that began: "Dear CPF, the fight for justice continues. Literally. Yesterday I had to get rid of my lawyer, Mr. Stover. He was assaulted in the courtroom." Stover testified, "I remember actually seeing the knuckles coming right at my eyes and I don't recall anything from there to the floor." The jury also saw a photograph taken of Mr. Stover shortly after the attack. Stover described the photograph as accurately depicting the way he looked after he was struck by appellant and "after I cleaned some of the blood after [*sic*] my face."

Appellant testified that he struck Stover because "I had gave him a list ... of 33 witnesses he didn't call and he had been lying to me." He did not identify at this trial any particular witness he had wished to call at his December 2006 misdemeanor trial, and did not attempt to explain what knowledge any of these 33 witnesses had that was pertinent to the misdemeanor charges he was facing at his December 2006 misdemeanor trial. Nor did appellant explain what Stover's "lie" was. Nor did he present any evidence that he had ever made a *Marsden* [FN3] motion at his misdemeanor trial to attempt to have Stover replaced with a different court-appointed attorney. Stover testified that "[t]he majority of Mr. Brashear's witnesses were the judge, the prosecutor, a number of other persons of that nature that were involved in his earlier trial that were completely irrelevant to the matter he was being tried for." Stover explained the "earlier trial" he was referring to was appellant's "murder trial."

FN3. *People v. Marsden* (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44.

Appellant's trial counsel's argument to the jury made clear that the "defense" he presented was the case appellant wished to present-to explain to the jury why appellant did what he did, and in essence to ask for mercy. Trial counsel began his argument as follows: "Just a few comments. [¶] We sat through this process because Mr. Brashear has that right. He's got the right to have a prosecutor bring in the evidence and prove these allegations. [¶] Now, Mr. Brashear wanted that opportunity and testified yesterday even though he didn't have to. But he wanted the opportunity to explain to you his conduct, and you heard his conduct." His argument ended as follows: "When driven to extreme circumstances, extreme circumstances in that he did not feel adequately represented, and he wanted a lawyer to accurately or vigorously defend him, and that's why he did what he did. [¶] Now, he didn't have a choice of lawyers. Mr. Stover was appointed by the Court. Mr. Stover [*sic*] was basically stuck with whomever came down to represent him, and it was his fear of being railroaded, quite frankly, and that's his point to make with you is that it was his fear of being [railroaded]. [¶] Mr. Brashear wants you to arrive at what he would deem as a just verdict in this case. He wants you to find him not guilty, ladies and gentlemen."

(LD 5:3-4.)

## DISCUSSION

## I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kings County Superior Court,

which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III. Review of Petition

#### A. Ground One

Petitioner first claims the trial court violated his federal constitutional rights when it failed to instruct the jury on the defense of necessity. Petitioner states he gave trial counsel a list of 33

witnesses to call on his behalf. Petitioner states trial counsel did not call those witnesses and lied to him. Petitioner asserts he attacked trial counsel out of necessity.

### *1. Analysis of Claim by State Court*

This claim was presented on direct appeal to the Fifth DCA, where it was rejected in a reasoned opinion. (LD 5:5-7.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 6, 7.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Fifth DCA rejected the claim as follows:

> "A defendant raising the defense of necessity has the burden of proving that he violated the law '(1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency.' (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035, 48 Cal.Rptr.2d 877." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267, 127 Cal.Rptr.2d 888; in accord, see also *People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1164, 123 Cal.Rptr.2d 322, and *People v. Kearns* (1997) 55 Cal.App.4th 1128, 1135, 64 Cal.Rptr.2d 654.) "Necessity does not negate any element of the crime, but represents a public policy decision not to punish an individual despite proof of the crime." (*People v. Heath* (1989) 207 Cal.App.3d 892, 901, 255 Cal.Rptr. 120. "The defense of necessity generally recognizes that 'the harm or evil sought to be avoided by (the defendant's) conduct is greater than that sought to be prevented by the law defining the offense charged.' [Citation.]" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 100, 17 Cal.Rptr.3d 710, 96 P.3d 30.)
>
> In the present case appellant's trial counsel did not raise a defense of necessity. Appellant now contends that the trial court should have instructed the jury, on the court's own initiative, on the defense of necessity. We disagree. "The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." (*People v. Blair* (2005) 36 Cal.4th 686, 744, 31 Cal.Rptr.3d 485, 115 P.3d 1145; in accord, see also *People v. Dominguez* (2006) 39 Cal.4th 1141, 1158, 47 Cal.Rptr.3d 575, 140 P.3d 866.) "In the absence of a request for a particular instruction, a trial court's obligation to instruct on a particular defense arises '"only if [1] it appears that the defendant is relying on such a defense, or [2] if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defense's theory of the case."' [Citations.]" (*People v. Dominguez, supra,* 39 Cal.4th at p. 1148, 47 Cal.Rptr.3d 575, 140 P.3d 866.)
>
> Neither of those requirements was met here. Appellant never took the position in the trial court that it was necessary for him to attack Mr. Stover. He merely sought to, and did, explain why he did what he did. Nor was there substantial evidence to support a necessity defense. As to the first element of a necessity defense, there was no evidence of any "significant evil" to be avoided. What appellant was attempting to avoid was any completion of his trial on a misdemeanor charge. A fair trial is a good thing, not a significant evil. Nor

did appellant attempt to present any evidence that his misdemeanor trial would have been unfair without the 33 witnesses he wished to call. The evidence we have on this issue came from Stover, whose testimony about these 33 witnesses was quoted above and suggests that appellant either wanted to relitigate his murder conviction or wanted to use the misdemeanor trial as a forum to air grievances about how his 1989 murder trial was conducted. As to the second element, appellant presented no evidence of "no adequate alternative." A defendant represented by court-appointed counsel in a criminal case (see *Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799) may request a different attorney. "However, the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. 'A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused.... The right of a defendant in a criminal case to have the assistance of counsel for his defense ... may include the right to have counsel appointed by the court ... discharged or other counsel substituted, if it is shown ... that failure to do so would substantially impair or deny the right ..., but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing ... that the right to the assistance of counsel would be substantially impaired ... in case the request is not granted, and within these limits there is a field of discretion for the court.'" [Citations.]" (*People v. Marsden, supra,* 2 Cal.3d at p. 123, 84 Cal.Rptr. 156, 465 P.2d 44.)

As to the third element of a necessity defense, appellant presented no evidence that his battery of Stover did not create "a greater danger than the one avoided." The dangers created by the battery included a risk of serious injury to Mr. Stover. There was no danger at all to be avoided if there had been no battery of Stover by appellant. As to elements four and five, regardless of what appellant's subjective belief may have been, there was no objectively reasonable belief that appellant's battery of Stover was necessary. As the prosecutor stated in his argument to the jury: "You didn't hear anything in any of the instructions nor will you find them in the written ones that says if you don't like your lawyer you can hit him. There is no legal defense for what he did." As to element six, there was no evidence of any "emergency." In sum, the court did not err by not instructing the jury, on the court's own initiative, on the unasserted defense of necessity.

(LD 5:5-7.)

*2. Federal Standard and Review of Claim*

The Supreme Court has held that due process mandates criminal prosecutions comport with prevailing notions of fundamental fairness. California v. Trombetta, 467 U.S. 479, 485 (1984). Implicit in this standard of fairness is the requirement that "criminal defendants be afforded a meaningful opportunity to present a complete defense." Id. When habeas relief is sought under 28 U.S.C. § 2254, "[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir.2004) (as amended); see also Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir.2002) ("[T]he right to present a defense would be empty if it did not entail the further right to an instruction

that allowed the jury to consider the defense.") (internal quotation marks omitted); Conde v. Henry, 198 F.3d 734, 739 (9th Cir.2000) (as amended) ("It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case."). A habeas petitioner must show that the alleged instructional error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also Beardslee, 358 F.3d at 578. The burden on the habeas petitioner is "especially heavy" where, as here, the alleged error involves the failure to give an instruction. Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir.1992) (as amended), *quoting* Henderson v. Kibbe, 431 U.S. 145, 155 (1977); Reynolds v. Maddock, 1999 WL 354366, *3 (N.D. Cal. 1999).

In this case, the state court rejection of this claim was entirely reasonable. The defense presented at trial was not one of necessity. As discussed by the appellate court, Petitioner merely attempted to explain why he attacked Mr. Stover. The elements of the defense were simply not presented at trial. First, there was no evidence that Petitioner acted to prevent a "significant evil." A fair trial with representation by counsel is not a "significant evil." Second, there was certainly an adequate alternative available. Petitioner could have alerted the court to his problems with trial counsel and moved for substitution of his attorney, rather than physically attacking him. Third, Petitioner fails to demonstrate that he avoided a greater danger than the one he caused. Petitioner risked serious injury to Mr. Stover. There was no danger of harm to be avoided. Fourth, despite Petitioner's subjective belief that force was necessary, objectively it was completely unreasonable to believe attacking Mr. Stover was necessary. Fifth, there is no evidence of an "emergency." Since no evidence of the elements of the defense existed, Petitioner cannot demonstrate the trial court's failure to instruct on the defense was objectively unreasonable. The claim is denied.

**B. Ground Two**

Petitioner states the trial court instructed the jury that he was the individual named in the exhibits when the jury was charged with determining from the exhibits whether he was convicted of the alleged prior crimes. He claims this instruction violated his constitutional right under Apprendi v. New Jersey, 530 U.S. 466 (2000), to have a jury determine each fact that increased the length of his sentence.

*1. Analysis of Claim by State Court*

This claim was also presented on direct appeal to the Fifth DCA where it was rejected in a reasoned opinion. (LD 5:10-11.) The claim was then presented to the California Supreme Court where it was summarily denied. (LD 6, 7.) The California Supreme Court is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA. Ylst, 501 U.S. at 803.

The appellate court denied the claim as follows:

> To prove the prior conviction allegations the prosecutor offered, and the court received into evidence as Exhibit 5, California Department of Corrections and Rehabilitation records showing appellant's convictions for first degree murder (Mar. 26, 1991 nunc pro tunc to June 21, 1989) and assault with a deadly weapon (Sept. 11, 1989), the court instructed appellant's jury with CALCRIM No. 3100, which stated in pertinent part: "It has already been determined that the defendant is the person named in exhibit 5. You must decide whether the evidence proves the defendant was convicted of the alleged crime[s]." Appellant contends that this instruction deprived him of a constitutional right to have a jury decide all issues pertaining to prior conviction allegations which will have an effect on his sentence.
>
> The California Supreme Court has determined that he does not. "The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution. [Citations.]" (*People v. Epps* (2001) 25 Cal.4th 19, 23, 104 Cal.Rptr.2d 572, 18 P.3d 2; in accord, see also *People v. Garcia* (2003) 107 Cal.App.4th 1159, 1164-1165, 132 Cal.Rptr.2d 694.) The court may "instruct the jury to the effect that the defendant is the person whose name appears on the documents admitted to establish the conviction." (*People v. Epps, supra,* 25 Cal.4th at p. 27, 104 Cal.Rptr.2d 572, 18 P.3d 2.) That is what the court did here. "This procedure would appear to leave the jury little to do except to determine whether those documents are authentic and, if so, are sufficient to establish that the convictions the defendant suffered are indeed the ones alleged. Whether this role makes sense is not for us to say. If the Legislature wants to provide a greater, or more precisely defined, role for the jury, or chooses to eliminate the jury altogether as many states have done, it may still do so." (*Id.* at p. 27, 104 Cal.Rptr.2d 572, 18 P.3d 2, italics omitted.) The decisions of the California Supreme Court "are binding upon and must be followed by all the state courts of California." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

(LD 5:10-11.)

*2. Federal Standard and Review of Claim*

Respondent correctly argues that this claim is without merit as Petitioner does not have a federal constitutional right to a jury trial on prior conviction allegations. In Apprendi, the Supreme Court held that *"[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (emphasis added). This

holding, including the exception for a defendant's criminal history, has been upheld by the Supreme Court in several subsequent cases. See James v. United States, 550 U.S. 192, 214 n.8 (2007); Cunningham v. California, 549 U.S. 270, 274-75 (2007); United States v. Booker, 543 U.S. 220, 230-31 (2005); Blakely v. Washington, 542 U.S. 296, 301 (2004). Therefore, the state court rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court. The claim must be denied.

**C. Ground Three**

Petitioner next claims he was denied his constitutional right to have a jury determine whether his prior conviction qualified as a "strike" pursuant to California's three strikes law. Petitioner contends the instruction was a violation of the principles set forth in Apprendi.

*1. Analysis of Claim by State Court*

This claim was also presented on direct appeal to the Fifth DCA where it was rejected in a reasoned opinion. (LD 5:11-12.) The claim was then presented to the California Supreme Court where it was summarily denied. (LD 6, 7.) The California Supreme Court is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA. Ylst, 501 U.S. at 803.

The claim was denied as follows:

> Appellant was sentenced to a term of 25 years to life because he had two qualifying "prior felony convictions" (§ 667, subd. (e)(2)(A); § 1170.12, subd. (c)(2)(A)), commonly called "strikes." A prior felony conviction is defined, for purposes of California's three strikes law, to include "[a]ny offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state." (§ 667, subd. (d)(1); § 1170.12, subd. (b)(1).) One of appellant's prior felony convictions was for murder (§ 187, subd. (a)). Murder is among the violent felonies listed in section 667.5. (See § 667.5, subd. (c)(1).) Appellant's other prior conviction was for a violation of section 245, subdivision (a)(1). A person violates section 245, subdivision (a)(1) when that person "commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury." (§ 245, subd. (a)(1).) An assault with a deadly weapon is a "serious felony." (§ 1192.7, subd. (c)(31).) So is "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice ...." (§ 1192.7, subd. (c)(8).) But an assault upon the person of another by means of force likely to produce great bodily injury is not a "serious felony" if the defendant does not personally inflict great bodily injury. (§ 1192.7, subd. (c)(8).) "[A]ssault merely by means likely to produce GBI, without the additional element of personal infliction, is not included in the list of serious felonies. Hence ... a conviction under the deadly weapon prong of section 245(a)(1) is a serious felony, but a conviction under the GBI prong is not." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065, 77 Cal.Rptr.3d 259, 183 P.3d 1226.) Nor is a conviction under the GBI prong of section 245, subdivision (a)(1) a "violent felony" unless

great bodily injury is actually inflicted and certain pleading requirements (not present in the case now before us) are met. (See § 667.5, subd. (c)(8).)

Appellant contends that the court erred in sentencing appellant as a third striker (§ 667, subd. (e)(2)(A); § 1170.12, subd. (c)(2)(A)) because (1) appellant's jury was not permitted to decide whether his section 245, subdivision (a)(1) conviction qualified as a "strike" under the three strikes law (see § 667, subd. (d) & § 1170.12, subd. (b)); (2) even if the court, and not the jury, should properly make such a determination, the court here failed to make an express determination that appellant's section 245, subdivision (a)(1) conviction qualified as a "strike"; and (3) there was insufficient evidence to support a finding that appellant's section 245, subdivision (a)(1) prior conviction qualified as a strike.

As for the first of these three contentions, appellant concedes that the issue was decided against him in *People v. McGee* (2006) 38 Cal.4th 682, 42 Cal.Rptr.3d 899, 133 P.3d 1054, and that this court is obligated under stare decisis to follow *McGee*. "Under the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction.... The decisions of this court are binding upon and must be followed by all the state courts of California." (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

(LD 5:11-12.)

### 2. Federal Standard and Review of Claim

In People v. McGee, 38 Cal.4th 682, 686-87 (2006), the California Supreme Court concluded that a defendant's federal constitutional right to jury trial is not implicated where a court, rather than a jury, makes the determination that a prior conviction constitutes a "strike" for purposes of California's three strikes law. The California Supreme Court stated that "[s]uch a function is a task for which a judge is particularly well suited and is quite different from the type of factual inquiry-assessing the credibility of witnesses or the probative value of demonstrative evidence-ordinarily entrusted to a jury." Id. at 686. In light of these considerations, the court stated it was "not prepared to assume that the high court will interpret the federal constitutional right to a jury trial as requiring a state to assign this function to a jury." Id.

Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court. The state court decision was entirely consistent with Supreme Court precedent as set forth in Apprendi. As previously stated, pursuant to Apprendi and subsequent Supreme Court cases, there is no clearly established federal constitutional right to a jury trial regarding his prior criminal history. Apprendi, 530 U.S. at 490. Therefore, this claim must be denied.

**IV.  Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

>   (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
>   (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
>   (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>           (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>           (B) the final order in a proceeding under section 2255.
>
>       (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>       (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a

certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2. The Clerk of the Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated: **February 19, 2010**     **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE